# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**NIKE, INC.,**

        **Plaintiff,**

**-vs-**                                              **Case No. 6:07-cv-1654-Orl-31KRS**

**OMAR LYDNER and VETA V. BROWN,**

        **Defendants.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR ENTRY OF DEFAULT JUDGMENT, PERMANENT INJUNCTION, AND OTHER FINAL ORDERS (Doc. No. 26)** |
| **FILED:** | July 28, 2008 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I. INTRODUCTION.

Plaintiff Nike, Inc. ("Nike") filed the present action on October 17, 2007, alleging that Defendants Omar Lydner, individually and doing business as www.rf45.com, www.retrofeet.com, www.23feet.com, www.pickyoursole.com, and www.jordans4sale.com, and Veta V. Brown, individually and doing business as www.multikicks.com and www.perfectkicks.com ("Defendants")[1]

---

[1] Other defendants were dismissed from the case [19, 22].

engaged in the willful, unauthorized sale of unlicensed and counterfeit products bearing Nike's exclusive trademarks. Defendants were served process on March 3, 2008, and Plaintiff filed proof of service on March 18, 2008 [20, 21]. The Clerk of Court entered defaults against each Defendant on May 15, 2008 [25].

On July 28, 2008, Nike filed the instant motion for default judgment, seeking statutory damages in the amount of $60,000.00 under the Lanham Act, 15 U.S.C. § 1051 *et. seq.*, entry of a permanent injunction prohibiting Defendants and their representatives from further infringement of Nike's trademarks, and other just relief. Defendants have not filed an response to the motion or otherwise appeared in the action.

## II.  APPLICABLE LAW REGARDING DEFAULT JUDGMENTS.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to" a default judgment. *Fid. & Deposit Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the

court may hold a hearing for the purposes of assessing damages. Fed. R. Civ. P. 55(b)(2); *see also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages. *Id*.

Section 43(c) of the Lanham Act provides for an injunction against another party's commercial use of a trademark if the other's use begins after the mark has become famous and causes dilution of the distinctive quality of the mark. 15 U.S.C. § 1125(c); *Portionpac Chem. Corp. v. Sanitech Systems, Inc.*, 217 F. Supp. 2d 1238, 1250 (M.D. Fla. 2002).

### III.   ALLEGATIONS OF THE COMPLAINT.

Nike alleged that it is a corporation engaged in the manufacture, design and sale of footwear, apparel, and related accessories. Doc. No. 1 ¶¶ 5, 6. These products bear several marks, including "NIKE," "Nike Air," and "Nike Shox," which marks are sometimes used with arbitrary and distinctive emblems, including one known as the "Swoosh Design." *Id.* ¶ 5(a) & Ex. A.. Nike registered these marks and the "Swoosh Design" with the United States Patent and Trademark Office between 1982 and 1995. *Id.* ¶ 5(b). Nike has used these marks continuously since they were registered in connection with its products. As such, these marks are incontestible. *Id.* ¶ 12.

Nike ensures that products bearing its marks are manufactured to the highest standards of quality. *Id.* ¶ 12. Because of Nike's longstanding use and large advertising expenditures in support of its marks, Nike's marks have become famous marks as defined in 15 U.S.C. § 1125(c)(1). *Id.* ¶ 13.

Defendant Lydner, doing business as www.rf45.com, www.retrofeet.com, www23feet.com, www.pickyoursole.com, and www.jordan4sale.com, and Defendant Brown, doing business as www.multikicks.com and www.perfectkicks.com, operates interactive websites through which they have distributed, offered for sale and sold shoes bearing exact copies or colorable imitations of Nike's

marks. *Id.* ¶ 15.[2] Defendants offer for sale and sell these counterfeit products in interstate commerce, without authorization from Nike, thus creating a likelihood of confusion, deception and mistake. *Id.* ¶ 21. Nike requested that Defendant cease and desist from the sales, but they continued to sell and offer for sale the counterfeit products. As such, they acted willfully with knowledge of the infringement and unfair competition. *Id.* ¶ 16.

## IV.   ANALYSIS.

### A.   Liability.

Nike's complaint asserts claims for trademark counterfeiting/infringement under 15 U.S.C. § 1114; unfair competition under 15 U.S.C. § 1125(a) and (d) for false designation of origin and false descriptions and representations in interstate commerce; dilution of famous marks under 15 U.S.C. § 1125(c) by trading on Nike's reputation and causing dilution of the distinctive quality of the marks; and unfair competition under Florida's common law. I address only the trademark counterfeiting claim because Nike does not seek additional damages arising from the additional causes of action.[3]

"To prevail on a claim of trademark infringement . . . , plaintiffs must establish: (1) that they possess a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred "in commerce," (4) that the defendants used the mark "in connection with the sale ... or advertising of any goods," and (5) that the defendants used the mark in a manner likely to confuse consumers. *North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).

---

[2] Nike attached copies of the advertisements for the counterfeit shoes to the complaint.

[3] The United States Court of Appeals for the Eleventh Circuit has recognized that "if there is no genuine issue of fact as to trademark infringement, there is none as to unfair competition, either." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991).

"After five years of continuous use, the Lanham Act allows the owner of a registered trademark to obtain incontestable status by filing an affidavit affirming that certain statutory requirements have been met. 15 U.S.C. § 1065. Once a registration has achieved incontestable status, it is treated as conclusive evidence of the registrant's right to use the trademark, subject to certain enumerated defenses. 15 U.S.C. § 1115(b). Thus, incontestability narrows, but does not eliminate the grounds upon which the trademark's validity may be called into question by a defendant." *Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 117 F.3d 1204, 1208 (11th Cir. 1999). By failing to answer the complaint, Lydner and Brown admit that Nike registered the marks at issue and have used them continuously for five years or more. This is sufficient to establish the first element of trademark infringement, that the marks are valid.

Also by failing to answer the complaint, Lydner and Brown admit that they used the marks in commerce in connection with the sale and advertising of goods.

As to the last element of trademark infringement, "[s]even factor are relevant when determining whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark, (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of the advertising methods; (6) the defendant's intent . . .; and (7) actual confusion" *Axiom Worldwide, Inc.*, 522 F.3d at 1221.

By failing to answer the complaint, Lydner and Brown admit that Nike's markets are strong, and that the markets they used are the same or colorably similar to Nike's marks. The products involved are the same, shoes. Lydner and Brown also admit that they willfully infringed Nike's marks

after receiving cease and desist letters from Nike. These admissions are sufficient to establish likelihood of confusion.

As such, Lydner and Brown are liable for trademark infringement.

## V. DAMAGES.

Chiayu Yu, an employee of counsel for Nike, averred that she viewed websites operated by Lydner and Brown that offered for sale products that bore Nike's marks. Yu and an investigator purchased three pairs of shoes from these websites. Yu Decl., Doc. No. 26-2, ¶¶ 3-12. After examination, Nike confirmed that the products purchased were counterfeit. Colbert Decl., Doc. No. 26-15, ¶¶ 29-31. The shoes Yu purchased bear the Nike mark, the Nike Shox mark, and/or the "Swoosh Design." Colbert Decl. ¶¶ 29-31. Yu further avers that after Lydner and Brown received cease and desist letters, they continued to offer for sale products bearing Nike's marks. Yu Decl. ¶¶ 13-18. Nike seeks an award against each defendant, jointly and severally, in the amount of $60,000.00 in statutory damages, and an injunction prohibiting the Lydner and Brown, their agents, employees and those acting in concert with them from infringing Nike's marks in the future.

The Lanham Act permits a plaintiff to elect either actual damages or statutory damages. In a counterfeiting case, a court may award statutory damages of "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Statutory damages increase to not more than $1,000,000 per counterfeit mark if a defendant acts willfully. *Id.* § 1117(c)(2). Therefore, an award of $60,000.00 is permitted by the Lanham Act based on the evidence of the three marks infringed, and it is within the amount requested in the prayer for relief in Nike's complaint.

The Lanham Act "does not provide guidelines for courts to use in determining an appropriate award." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124-25 (S.D.N.Y. 2003)("The statute 'does not provide guidelines for courts to use in determining an appropriate award' and is only limited by what 'the court considers just.'")(internal citation omitted). Many courts look to the Copyright Act's analogous provision, 17 U.S.C. § 504(c), in this situation. *See, e.g.*, *Tiffany*, 282 F. Supp. 2d at 125; *Louis Vuitton*, 211 F. Supp. 2d at 583; *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999); *see also PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004)(citing *Tiffany* and other cases for the same proposition); *Punch Clock, Inc. v. Smart Software Dev.*, 553 F. Supp. 2d 1353, 1357 (S.D. Fla. 2008)(same).

Under the Copyright Act, courts consider factors such as: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." *Tiffany*, 282 F. Supp. 2d at 125 (internal citations omitted).

Nike has submitted no evidence with the instant motion concerning the expenses saved and profits reaped by Defendants or the revenues lost by Plaintiff. However, "[t]he statutory damages provision was added in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . ." *Tiffany*, 282 F. Supp. 2d at 124 (citation omitted). Because Defendants have failed to respond to Nike's complaint or the instant motion, an actual damages calculation "is extremely difficult if not impossible." *Id.*

Nike's well-pleaded allegations and evidence establish that Lydner and Brown willfully infringed Nike's protected marks and continued to do so even after receiving a cease and desist letter. Lydner and Brown's conduct, the continued use of the mark after the cease and desist letter, and the need for deterrence all support an award of statutory damages in excess of the $500 minimum. Given these facts, I recommend the Court award statutory damages in the amount of $60,000.00, plus post-judgment interest pursuant to 28 U.S.C. § 1961(a).

## IV. INJUNCTIVE RELIEF.

In addition, Nike seeks permanent injunctive relief. In addition to § 43(c) of the Lanham Act, discussed *supra*, 15 U.S.C. § 1116(a) provides, in relevant part, that "[t]he several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."

A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered in irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of the hardships between plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 390 (2006).

In *eBay*, the Supreme Court rejected a "general rule" that either presumed irreparable injury or categorically denied it in patent cases. *See generally id.* In *North American Medical Corporation v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008), the Eleventh Circuit declined to decide whether a presumption of irreparable injury in a trademark infringement case "is the equivalent of the categorical rules rejected by the [Supreme] Court in *eBay*." However, that case is distinguishable from the one at bar.

In *Axiom Worldwide*, the Eleventh Circuit confronted the relatively unique circumstance of trademark infringement arising from a defendant's use of the plaintiff's trademarks in meta tags on its website, which meta tags were not displayed to visitors to the website. *Id.* at 1216-17. In analyzing whether defendant was entitled to a preliminary injunction, the Eleventh Circuit acknowledged that its "prior cases do extend a presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim." *Id.* at 1227. The court declined to resolve the issue of whether the presumption would be sufficient to establish irreparable harm in light of *eBay*, instead remanding the case to the district court to determine whether irreparable harm was shown without reliance on the presumption, among other things. *Id.* at 1228. Accordingly, I examine the well-pleaded allegations of the complaint admitted by Lydner and Brown and the evidence presented by Nike to determine whether irreparable harm has been shown without reliance on the presumption. Lydner and Brown admit the following well-pleaded allegations of the complaint:

- Nike uses its marks "as trademarks of Nike's high-quality products." Doc. No. 1 ¶ 5b.
- "Each of the distinctive trademarks signifies to the purchaser that the product originates exclusively with Nike and is manufactured to standards of the highest quality. . . . As a result, Nike has established further goodwill in the Nike Trademarks which have become valuable assets of Nike." *Id.* ¶ 12.
- "Nike has spent significant sums of money advertising and marketing products and services featuring its trademarked properties, creating a consumer demand for such productions and services throughout the United States. Consequently, these products and services have become widely known and accepted." *Id.* ¶ 39.

- "The sale of unauthorized products bearing the Nike Trademarks, which are of an inferior quality to the authorized and authentic product, will further dilute the goodwill and reputation of Nike." *Id.* ¶ 31.

These facts establish that Nike has developed goodwill among the consuming public which would be undermined if Defendants are not prohibited from selling merchandise bearing Nike's marks, thereby creating a likelihood that the public would be confused about the origin of merchandise, particularly when the merchandise was not manufactured to Nike's quality standards. Further, as discussed above, Defendants willfully infringed Nike's protected marks and continued to do so even after receiving a cease and desist letter. Lydner and Brown's actual use of protected marks and the continued use of those marks after Nike's cease and desist letter demonstrate a likelihood that Defendants would likely continue to harm Nike's trademarks if this Court declined to issue an injunction. The immediate, ongoing violation of Nike's right to exclude third parties from using their protected trademarks is not compensable through monetary remedies, *see eBay*, 547 U.S. at 394-95 (Roberts, C.J., concurring), and is sufficient evidence of irreparable harm.

The hardship to Nike if sales of the infringing goods is not enjoined as been discussed above. The only harm to Defendants as a result of the injunction is that they will be precluded from selling merchandise that infringes Nike's marks. As such, the balance of the hardships favors issuance of the injunction.

An injunction would serve the public interest by protecting consumers from being misled and confused as to the source of Defendants' unauthorized merchandise bearing Nike's Trademarks. *See BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla.

1991)("In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount.").

Because the factors under Fed. R. Civ. P. 65 favor entry of a permanent injunction, I recommend that the Court grant Nike's request for issuance of a permanent injunction. Because Nike did not address the basis for the proposed language in paragraph c. on page 4 of its proposed order, doc. no. 26-16 at 5, I recommend that the Court draft its own injunction or seek further briefing from Nike on the scope of the proposed permanent injunction.

## V. RECOMMENDATION.

For the foregoing reasons, I hereby recommend that the Court **GRANT** the motion for default judgment against Defendants, jointly and severally, and award statutory damages in the amount of $60,000.00, plus post-judgment interest pursuant to 28 U.S.C. § 1961(a), and **ENTER** a permanent injunction in a form approved by the Court. I further recommend that the Court direct the Clerk of Court to enter a judgment consistent with its order on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 4, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE